FILED

2013 Aug-02 PM 12:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **CONNIE COLETTE BOYD,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 2:12-CV-0335-VEH** |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| **ACTING COMMISSIONER,** | ) |
| **SOCIAL SECURITY** | ) |
| **ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | ) |

---

## MEMORANDUM OPINION[1]

Plaintiff Connie Colette Boyd ("Ms. Boyd") brings this action under 42 U.S.C. § 405(g), § 205(g) of the Social Security Act. She seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied her application Supplemental Security Income

---

[1] The court notes that on February 14, 2013, Carolyn W. Colvin was named the Acting Commissioner of the Social Security Administration on February 14, 2013. *See* http://www.socialsecurity.gov/pressoffice/factsheets/colvin.htm ("On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security."). Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the officer of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the court has substituted Carolyn W. Colvin for Michael Astrue in the case caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

("SSI").[2]   Ms. Boyd timely pursued and exhausted her administrative remedies available before the Commissioner.  The case is thus ripe for review under 42 U.S.C. § 405(g).[3]

## FACTUAL AND PROCEDURAL HISTORY

Ms. Boyd was forty-seven years old at the time of her hearing before the Administrative Law Judge ("ALJ").  (Tr. 29).  She has completed high school.  (Tr. 30).  Her past work experiences include employment as a cleaner and supervisor.  (Tr. 29).  She claims she became disabled on March 31, 2007, due to HIV, depression, back pain, loss of teeth, difficulty using arms, and lack of energy.  (Tr. 65, 85, 90).  Her last period of work ended on March 31, 2007.  (Tr. 90).

On September 2, 2008, Ms. Boyd protectively filed a Title XVI application for SSI.  (Tr. 85).  On April 16, 2009, the Commissioner initially denied this claim.  (Tr. 33-35).  Ms. Boyd timely filed a written request for a hearing on June 8, 2009.  (Tr. 36).  The ALJ conducted a hearing on the matter on September 22, 2010.  (Tr. 417-71).  On November 16, 2010, the ALJ issued her opinion concluding Ms. Boyd was

---

[2] In general, the legal standards applied are the same regardless of whether a claimant seeks SSI or Disability Insurance Benefits ("DIB").  However, separate, parallel statutes and regulations exist for SSI and DIB claims.  Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates.  The same applies to citations of statutes or regulations found in quoted court decisions.

[3] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

not disabled and denying her benefits. (Tr. 14-31). Ms. Boyd timely petitioned the

Appeals Council ("AC") to review the decision on February 28, 2011. (Tr. 411-16).

On December 2, 2011, the Appeals Council issued a denial of review on her claim.

(Tr. 5-8).

Ms. Boyd filed a Complaint with this court on January 31, 2012, seeking

review of the Commissioner's determination. (Doc. 1). With the parties having fully

briefed the matter, the court has carefully considered the parties' arguments and the

record, and for the reasons stated below, reverses the Commissioner's denial of

benefits, and remands the case for further development and consideration.[4]

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed.

The function of this court is to determine whether the decision of the Commissioner

is supported by substantial evidence and whether proper legal standards were applied.

*Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219,

1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine

---

[4] The undersigned has rendered several other comparable decisions which have reversed the Commissioner due to an underdeveloped record and/or an inadequately supported residual functional capacity ("RFC") determination from which the framework, analysis, and disposition of this case persuasively flow. *See, e.g.*, *Stewart v. Astrue*, No. 5:11-CV-2103-VEH, (Docs. 10, 11) (N.D. Ala. May 14, 20120) (reversing and remanding when RFC finding is not supported by substantial evidence); *Howard v. Astrue*, No. 3:10-CV-527-VEH, (Docs. 15, 16) (Dec. 16, 2010) (same); *Mahaley v. Astrue*, No. 5:09-CV-0347-VEH, (Docs. 12, 13) (N.D. Ala. Feb. 18, 2010) (same); *Glover v. Astrue*, No. 3:09-CV-0033-VEH, (Docs. 15, 16) (N.D. Ala. Mar. 4, 2010) (same).

if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions de novo because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[5] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically

---

[5] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, current through July 11, 2013.

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)  whether the claimant is currently employed;
(2)  whether the claimant has a severe impairment;
(3)  whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4)  whether the claimant can perform his or her past work; and
(5)  whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

Once the claimant has satisfied steps One and Two, she will automatically be

found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

## **FINDINGS OF THE ADMINISTRATIVE LAW JUDGE**

After consideration of the entire record, the ALJ made the following findings of fact and conclusions of law:

1.    Ms. Boyd has not engaged in substantial gainful activity since September 2, 2008, the application date. (Tr. 19).

2.    Ms. Boyd has the following severe impairments: HIV, bipolar disorder, peripheral neuropathy, hepatitis C, arthritis, obesity and hypertension. *Id*.

3.    Ms. Boyd does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 21).

4.    The ALJ found that Ms. Boyd has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except she can occasionally climb stairs or ramps, but never ladders, ropes or scaffolds. (Tr. 24). Ms. Boyd can occasionally balance, stoop and kneel; but never crouch or crawl. *Id.* She should avoid exposure to hazardous conditions such as heights and moving machinery. *Id.* Ms. Boyd is also limited to repetitive, routine tasks. *Id.* Work place changes should be infrequent and introduced gradually. *Id.* She can perform work that needs little or no judgment and she can make simple, work-related decisions. *Id.* Ms. Boyd can have occasional, casual interaction with the public, and also occasional interaction with co-workers and supervisors. *Id.* She is able to sustain concentration and attention for two hours at one time

6

with normal breaks throughout an eight-hour day. (Tr. 25).

5.  Ms. Boyd is unable to perform any past relevant work. (Tr. 29).

6.  Ms. Boyd was 45 years old, which is defined as a younger individual age 45-49, on the date the application was filed. *Id.*

7.  Ms. Boyd has at least a high school education and is able to communicate in English. (Tr. 30).

8.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. *Id.*

9.  Considering Ms. Boyd's age, education, work experience, and residual functional capacity, the ALJ found that there are jobs that exist in significant numbers in the national economy that the claimant can perform. *Id.*

Accordingly, the ALJ concluded that Ms. Boyd has not been under a disability, as defined in the Social Security Act, since September 2, 2008, the date on which her application was filed. *Id.*

## ANALYSIS

## I.  INTRODUCTION

The court may only reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th

Cir. 1980)).[6] However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Ms. Boyd urges this court to reverse the Commissioner's decision to deny her benefits on two grounds:

> 1) the ALJ's residual functional capacity findings are not based on medical opinion, and;
>
> 2) the ALJ's residual functional capacity findings are not based on substantial evidence.

(Doc. 8). The court turns to the lack of an underlying vocationally-related medical opinion by a physician in support of the ALJ's RFC determination that Ms. Boyd is capable of performing sedentary work with additional restrictions given her severe physical and mental impairments. In light of this deficiency, the court agrees with Ms. Boyd that, under the circumstances of her case, the Commissioner has committed reversible error.

---

[6] *Strickland* is binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

II.   **IN THE ABSENCE OF A SUPPORTING MEDICAL SOURCE STATEMENT OR A PHYSICAL CAPACITIES EVALUATION BY A PHYSICIAN THAT CONSIDERS THE VOCATIONAL IMPACT OF MS. BOYD'S SEVERE PHYSICAL AND MENTAL IMPAIRMENTS, THE ALJ'S RESIDUAL FUNCTIONAL CAPACITY DETERMINATION THAT SHE CAN PERFORM SEDENTARY WORK WITH ADDITIONAL RESTRICTIONS IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.**

### A. The ALJ has failed to adequately develop the record.

While Ms. Boyd has the burden of proving her disability, the ALJ has a basic obligation to develop a full and fair record. *Cowart v. Schweiker*, 662 F.2d 731, 732 (11th Cir. 1981) (citing *Thorne v. Califano*, 607 F.2d 218, 219 (8th Cir. 1979)). When the ALJ has failed to develop a full and fair record, the court "has required the Secretary to reopen the case 'until the evidence is sufficiently clear to make a fair determination as to whether the claimant is disabled or not.'" *Thorne*, 607 F.2d at 220 (quoting *Landess v. Weinberger*, 490 F.2d 1187, 1189 (8th Cir. 1974)). In support of her RFC determination for Ms. Boyd, the ALJ did not identify a medical source opinion or a physical capacities evaluation conducted by a physician that substantiates Ms. Boyd's ability to perform sedentary work given her severe collection of impairments. Such an omission from the record is significant to the substantial evidence inquiry pertaining to the ALJ's RFC determination. *See, e.g., Rohrberg v. Apfel*, 26 F. Supp. 2d 303, 311 (D. Mass. 1998) ("The ALJ failed to refer to-and this Court has not found-a proper, medically determined RFC in the record.").

9

The court acknowledges that the ALJ did refer in her decision to several of Ms. Boyd's medical records. (Tr. 26-29) (Exhibits 1F, 2F, 3F, 4F, 5F, 6F, 7F, 9F and 10F). However, these referenced medical documents contain merely raw physical and mental findings related to Ms. Boyd's diagnosed conditions. (*See, e.g.*, Tr.105-28 (medical records from Bridgeport Community Health); Tr. 129-45 (emergency/outpatient record from Bridgeport Hospital); Tr. 160-81 (emergency department notes from St. Vincent's Hospital); Tr. 190-214 (emergency department notes from St. Vincent's East); Tr. 215-70 (treatment notes from 1917 Clinic); Tr. 322-66 (inpatient treatment notes from Presbyterian Hospital); Tr. 367-410 (emergency department notes from UAB Hospital)).

The records noted by the ALJ in her opinion simply documented Ms. Boyd's medical conditions, complaints, and treatment, and none of the records cited by the ALJ provided any assessment of her impairments in vocational terms. *See, e.g., Rohrberg*, 26 F. Supp. 2d at 311 ("Where the 'medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate these diagnoses to specific residual functional capabilities such as those set out in 20 C.F.R. § 404.1567(a) . . . [the Commissioner may not] make that connection himself.'") (citation omitted).

Another district judge of this court aptly explained the RFC issue in the

10

context of an ALJ who comparably determined, without the benefit of a physical

capacities evaluation conducted by a physician, that the claimant was not disabled:

> While the Record contains Ms. Rogers'[s] medical treatment
> history, it lacks any physical capacities evaluation by a physician. The
> ALJ made his residual functional capacity evaluation without the
> benefit of such evaluation. An ALJ is allowed to make some
> judgments as to residual physical functional capacity where so little
> physical impairment is involved that the effect would be apparent to
> a lay person. *Manso-Pizarro v. Secretary of Health and Human
> Services*, 76 F.3d 15 (1st Cir. 1996). In most cases, including the case
> at bar, the alleged physical impairments are so broad, complex, and/or
> ongoing that a physician's evaluation is required. *Id*. In order to have
> developed a full, fair record as required under the law, the ALJ should
> have re-contacted Ms. Roger's [sic] physicians for physical capacities
> evaluations and/or sent her to physicians for examinations and
> physical capacities evaluations . . . . Ms. Rogers' [s] residual
> functional capacity was not properly determined nor supported by
> substantial evidence in this case.

*Rogers v. Barnhart*, No. 3:06-CV-0153-JFG, (Doc. 13 at 5) (N.D. Ala. Oct. 16, 2006)

(emphasis added); *see also Manso-Pizarro*, 76 F.3d at 17 ("With a few exceptions

(not relevant here), an ALJ, as a lay person, is not qualified to interpret raw data in

a medical record.") (emphasis added) (citations omitted); *Rohrberg*, 26 F. Supp. 2d

at 311 ("An ALJ is not qualified to assess a claimant's RFC on the basis of bare

medical findings, and as a result an ALJ's determination of RFC without a medical

advisor's assessment is not supported by substantial evidence.") (emphasis added)

(citation omitted); *cf. Giddings v. Richardson*, 480 F.2d 652, 656 (6th Cir. 1973) ("To

meet such a *prima facie* case it is not sufficient for the government to rely upon inconclusive medical discussion of a claimant's problems without relating them to the claimant's residual capacities in the field of employment.") (emphasis added).

Comparable to *Rogers*, *Manso-Pizarro*, and other similar cases, a lay person such as an ALJ is not able to discern Ms. Boyd's work-related exertional abilities and appropriate non-exertional restrictions based upon the unfiltered information contained in her medical records. The ALJ's direct citation to raw medical evidence indicates that she improperly "succumbed to the temptation to play doctor and make [her] own independent medical findings." *Carlisle v. Barnhart*, 392 F. Supp. 2d 1287, 1295 (N.D. Ala. 2005) (quoting *Rohan v. Charter*, 98 F.3d 966, 970 (7th Cir. 1996)). Therefore, in the absence of a medical source statement and/or a physical capacities evaluation conducted on Ms. Boyd by a physician that corroborates the ALJ's determination that she is capable of performing sedentary work with certain restrictions despite her severe impairments, the record has not been adequately developed.[7] *See, e.g., Cowart*, 662 F.2d at 732 (citing *Thorne v. Califano*, 607 F.2d 218, 219 (8th Cir. 1979)); *accord Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997) ("The record's virtual absence of medical evidence pertinent to the

---

[7] A search of the record yields a physical capacities evaluation performed by Dr. Franco, but the ALJ specifically noted that she gave little weight to Dr. Franco's opinion. (Exhibit 5F; Tr. 29).

issue of plaintiff's RFC reflects the Commissioner's failure to develop the record, despite his obligation to develop a complete medical history.") (citations omitted).

### B. The ALJ has failed to substantiate the conclusions that she reached regarding Ms. Boyd's vocationally-related mental functioning.

The ALJ's RFC determination additionally lacks substantial support because it fails to adequately address the impact of Ms. Boyd's mental impairment, which condition the ALJ acknowledged was severe.[8] In particular, the ALJ gave little weight to the opinion of a treating psychiatric nurse practitioner as to the vocational effects of Ms. Boyd's mental impairments, but did not reference any other documentation that substantiates her RFC determination that Ms. Boyd can perform sedentary work with restrictions. The ALJ also gave little weight to the opinions of State medical consultants regarding Ms. Boyd's mental limitations. (Tr. 29). Furthermore, the court notes that the Psychiatric Review Technique Form ("PRTF") is incomplete due to "insufficient evidence" and therefore cannot substantially support the RFC determination with respect to Ms. Boyd's mental functioning capacity. (Tr. 146-58).

Regarding the PRTF more specifically, the Eleventh Circuit joined sister circuits in *Moore v. Barnhart* when it held "that where a claimant has presented a

---

[8] *See Brunson v. Astrue*, 850 F. Supp. 2d 1293, 1302 (M.D. Fla. 2011) (holding that the ALJ's "RFC does not appear to adequately reflect Plaintiff's mental impairment and certainly does not reflect 'a more detailed analysis' with specific findings as to the impact of Plaintiff's [impairments] on his ability to perform work" (citing *Millhouse v. Astrue*, No. 8:09-CV-378-T-TGW, 2009 WL 763740 (M.D. Fla. Mar. 23, 2009))).

colorable claim of mental impairment, the social security regulations require the ALJ to complete a PRTF, append it to the decision, or incorporate its mode of analysis into his findings and conclusions. Failure to do so requires remand." *Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005) (citing *Gutierrez v. Apfel,* 199 F.3d 1048, 1051 (9th Cir. 2000) ("where claimant presents colorable claim of mental impairment, ALJ's failure to comply with PRTF regulations requires remand"));[9] *see also Hill v. Sullivan,* 924 F.2d 972, 975 (10th Cir. 1991) ("ALJ's failure to evaluate claimant's alleged mental disorder or to document the procedure on a PRTF required reversal"); *Montgomery v. Shalala,* 30 F.3d 98, 100 (8th Cir. 1994) ("reversing and remanding because ALJ purported to evaluate mental disorder, but failed to do so according to PRTF and its regulations").

## CONCLUSION

In sum, in deciding to give little weight to all of the vocationally-related medical opinions in the record, the ALJ did not rely upon any medical source statement in support of her RFC determination. Instead, it appears that the ALJ

---

[9] Superseded on other grounds by regulation, 20 C.F.R. § 404.1520a (2001), as first stated in *Jones v. Astrue*, No. CIV S-07-2017 KJM, 2009 U.S. Dist. LEXIS 23902, at *6 n.4 (Mar. 24, 2009) ("Previously, a PRTF [] was required to be appended to the ALJ's decision. The regulation now only requires that the pertinent findings and conclusions based on the technique be incorporated into the decision . . . [R]equiring incorporation of the findings and conclusions . . . allows for meaningful review by the court in determining whether substantial evidence supports the ALJ's findings."); *see also Lemke v. Comm'r SSA*, No. 09–35379, 380 Fed. App'x 599, 601 (9th Cir. May 21, 2010) (same).

14

arbitrarily arrived at Ms. Boyd's RFC without the benefit of any corroborating physical or mental functional proof provided by a physician or otherwise substantiated by the record. Accordingly, the ALJ's determination that Ms. Boyd can perform restricted sedentary work is not supported by substantial evidence.

**DONE** and **ORDERED** this 2nd day of August, 2013.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

15